UNITED STATES DISTICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TINA M. WINKLER, et al., | * | |
| | * | |
| Plaintiffs, | * | Case No. 18-cv-00865-PX |
| | * | |
| v. | * | Judge Paula Xinis |
| | * | |
| MEDTRONIC, INC., and | * | |
| HEARTWARE, INC. | * | |
| | * | |
| Defendants | * | |

**SECOND AMENDED COMPLAINT**

TINA M. WINKLER, Individually, and as Mother and Next Friend of JW, a minor, MADELINE WINKLER, KELLY WINKLER and STEPHANIE LACONIA, Plaintiffs, sue MEDTRONIC, INC., AND HEARTWARE, INC.,  Defendants, and for cause of action state:

1.   Plaintiffs are the surviving children and spouse of John C. Winkler, deceased. John C. Winkler died on January 6, 2015, as a result of a defective Ventricular Assist System manufactured by the Defendant Heartware, Inc., which has since been acquired by the Defendant Medtronic Inc.

2.   This court has jurisdiction over Defendants pursuant to the Maryland "long arm" statute, Courts & Judicial Proceedings Article, §6-103, in that the Defendants regularly do or solicit business in the State of Maryland, and derive substantial revenue from goods used or consumed in the State of Maryland. The Defendant Medtronic, Inc., acquired the Defendant Heartware, Inc., and, as its successor, is liable for injuries and damages caused by its defective products.

3. Plaintiff Tina Winkler maintains this action individually and as the Mother and Next Friend of JW, a minor, and the son of John C. Winkler. Plaintiffs Madeline Winkler, Kelly Winkler and Stephanie Laconia maintain this action as the surviving adult children of John C. Winkler.

4. Defendants are the manufacturers of a ventricular assist system known as the "HeartWare Ventricular Assist System," ("HVA System"). This system consists of a LVAD pump, a controller, external power (battery, AC adapter and DC adapter), and a battery charger. The LVAD pump is implanted into the patient and connects to the controller through a driveline. The power sources connect to the controller. The controller is intended to monitor the power sources and to warn the user when power is low or is lost. The loss of power is potentially fatal, as the pump will cease working immediately.

The HeartWare LVAD pump was implanted into Plaintiff's decedent on August 26, 2014 at Duke University Hospital, in North Carolina. The purpose of the HVA System was to serve as a "bridge" to cardiac transplantation in patients at high risk of death from refractory end-stage left ventricular heart failure. The device was intended to provide life sustaining ventricular function to Plaintiffs' decedent's heart while he awaited a heart transplant. On January 4, 2015, John Winkler had two batteries connected to the controller, the primary and the back up battery. The manner in which the HVA system is intended to work is, when one battery was depleted (25% of capacity), the controller would automatically switch to the back up battery for power. However, in this instance, the back-up battery was defectively manufactured due to faulty cells, and

was fully depleted. When the controller switched to the back up battery, there was no power to operate the pump. When the system lost all power, the pump stopped working depriving John C. Winkler of heart function. When the pump stopped working, John C. Winkler suffered a cardiac arrest from which he died on January 6, 2015.

5. On November 20, 2012, HeartWare, Inc., received premarket approval for the "HeartWare Ventricular Assistive System" as a Class III device from the United States Food and Drug Administration. The batteries for the HVA System are expected to function through a minimum of 500 charge and discharge cycles to provide patient support for at least one year. Defectively manufactured batteries which fail to hold a charge due to faulty cells violate the standards required by the FDA for premarket approval of the HVA System.

6. The HVA System is comprised of various components, which include battery packs, chargers, controllers, AC adapters, HVAD monitors. The HVA System was designed and assembled by Defendants. The various components of the Defendants' HVA System were manufactured by various third party manufacturers, who are not Defendants in this action. Upon information and belief, the components of the HVA System in use at the time of John Winkler's injury were assembled into the final HVA System by Defendants at their manufacturing facility located in Minnesota. This would include defectively manufactured batteries and/or controllers. Accordingly, the "wrongful act" that resulted in the death of John C. Winkler, occurred in the State of Minnesota.

## COUNT ONE
### (Negligent Manufacture)

Plaintiffs incorporate the facts and allegations of Paragraphs 1-6 hereof, and for further cause of action state:

7. In their manufacturer of the HVA System, Defendants had a duty to manufacture their product so as to fit the purpose for which it was intended, to reproduce the pumping action of the left ventricle in a safe and reliable manner in order for the heart to function, with the knowledge that failure of the device would result in the death of its user.

8. Defendants were negligent in the manufacture of the HVA System that was in use by Plaintiffs' decedent Johns C. Winkler at the time of his death in that the "back up" battery contained faulty cells and lost power prematurely. The components, particularly the batteries and controllers that provided the source of power to the HVA System devices, were negligently manufactured and failed to provide power to the LVAD pump in a safe and reliable manner causing it to fail without notice to the user of the device. Due to defective manufacture, one of the batteries in use by Plaintiffs' decedent lost power and was intended to switch to a backup battery. However the back up battery was defective in manufacture and, when the controller switched to it, there was no power to power the device. The system was further defectively manufactured due to the failure to warn the user that the back-up battery was totally depleted.

9. As a result of the negligent manufacture of Defendants' product, on January 4, 2015, the LVAD device in use by Plaintiffs' decedent John C. Winkler suddenly and without warning lost power, without notice to Plaintiffs' decedent John C. Winkler, causing him to suffer a cardiac arrest and die on January 6, 2015.

## COUNT TWO
### (Failure to Warn)

Plaintiffs incorporate the facts and allegations of Paragraphs 1-9 hereof, and for further cause of action state:

10. Defendants knew or should have known that the batteries in use by patients were defective due to faulty cells and that they could fail without sufficient notice to users to allow for alternative power source to the LVAD to avoid serious injury or death.

11. Defendants failed to timely notify and warn the users of its HVA System, including Plaintiffs' decedent John C. Winkler, of the product defect and the potential for serious injury or death in the event of a total loss of power to the LVAD.

12. As a result of Defendants' failure to timely notify and warn Plaintiffs' decedent of the faulty and defective batteries, the HVA System in use by Plaintiffs' decedent suddenly and without warning lost power without notice to Plaintiffs' decedent John C. Winkler, causing him to suffer a cardiac arrest and die on January 6, 2015.

## COUNT THREE
### (Breach of Warranty)

Plaintiffs incorporate the facts and allegations of Paragraphs 1-9 hereof and for further cause of action state:

13. Defendants expressly and impliedly warranted that the HVA System used by Plaintiffs' decedent was free from design and manufacturing defects and was fit for its intended purpose, to provide life sustaining circulation of blood circulation of blood to the user. Defendants knew that failure of its device would be catastrophic and fatal.

14. Plaintiffs' decedent was the intended user of Defendants' product and used it in accordance with the instructions provided by Defendants.

15. Defendants breached their express and implied warranties that their product was free from design and manufacturing defects and was fit for its intended purpose by providing defectively manufactured batteries to operate the device.

16. As a result of the breach of warranty by Defendants, on January 4, 2015, the LVAD in use by Plaintiffs' decedent John C. Winkler suddenly and without warning lost power without notice to Plaintiffs' decedent John C. Winkler, causing him to suffer a cardiac arrest and die on January 6, 2015.

**COUNT FOUR**
**(Strict Liability)**

Plaintiffs incorporate the facts and allegations of Paragraphs 1-9 hereof, and for further cause of action state:

17. Defendants sold the HVA System that was in use by Plaintiffs' decedent John C. Winkler at the time of his cardiac arrest on January 4, 2015, and he was an intended user of the product.

18. The defective manufacture of the batteries supplied by Defendants rendered the product defective and unsafe and unreasonably dangerous for use by Plaintiffs' decedent John C. Winkler.

19. The defendants' HVA System that was assembled by Defendants remained unchanged from its original design and manufacture and was in the same condition at the time of Plaintiffs' decedent's injury and death.

20. As a result of Defendants' defectively manufactured product, John C. Winkler suffered a cardiac arrest on January 4, 2015, and died on January 6, 2015.

## COUNT FIVE
### (Wrongful Death)

Plaintiffs incorporate the facts and allegations of Paragraphs 1-20 hereof and for further cause of action state:

21. As a direct and proximate result of the aforesaid negligent manufacture and breach of warranty by Defendants, Plaintiffs' decedent John C. Winkler suffered a cardiac arrest on January 4, 2015, and died on January 6, 2015.

22. As a direct and proximate result of the aforesaid negligent manufacture and breach of warranty by the Defendants, and the resultant death of their father John C. Winkler, Plaintiffs JW, Madeline Winkler, Kelly Winkler and Stephanie Laconia have suffered and will suffer in the future sorrow, mental anguish, and loss of society, companionship, comfort, guidance, kindly offers and advice of their father and have lost the income, services, care and assistance that would have been provided to them by John C. Winkler, and have been otherwise injured and damaged.

23. Plaintiffs request that they be awarded damages for pecuniary loss, loss of services, including care, attention, companionship, and society, and for the grief, solace, sorrow and suffering occasioned by the injury and death of John C. Winkler.

WHEREFORE, Plaintiffs Tina M. Winkler, individually and as Mother and Next Friend of JW, Madeline Winkler, Kelly Winkler and Stephanie Laconia, Plaintiffs, claim and demand judgment against the Defendants Medtronic, Inc., and Heartware, Inc., in an amount in excess of Seventy Five Thousand Dollars ($75,000.00), plus interest and the costs of these proceedings.

/s/ John J. Selllinger
John J. Sellinger #05236
Greenberg & Bederman, LLC
1111 Bonifant Street
Silver Spring, MD 20910
(301) 589-2200
(301) 589-9424 (fax)
jsellinger@gblawyers.com

Attorneys for Plaintiff

## JURY DEMAND

Plaintiffs demand and a trial by jury on all issues so triable.

/s/ John J. Sellinger
John J. Sellinger

**CERTIFICATE OF SERVICE**

       I HEREBY CERTIFY that on the 5th day of March, 2019, the foregoing document was filed via the Court's CM/ECF system upon

Matthew W Saxon, Esquire,
Winston & Strawn, LLP
700 K. Street,, N.W.
Washington, D.C. 20006-3871

And

Scott Ahmad, Esquire
DaWanna McCray, Esquire
Winston & Strawn, LLP
35 Wacker Drive, Chicago, IL 60601

Attorneys for Defendants.

                                            **/s/ John J. Sellinger**
                                            John J. Sellinger