UNITED STATES DISTICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| TINA M. WINKLER, et al. | * | |
| | * | |
| Plaintiffs, | * | Case No. 18-cv-00865-PX |
| | * | |
| v. | * | Judge Paula Xinis |
| | * | |
| MEDTRONIC, INC., and | * | |
| HEARTWARE, INC. | * | |
| | * | |
| Defendants. | * | |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Plaintiffs, by counsel, submit this Memorandum in support of their Opposition to Defendants' Motion to Dismiss Second Amended Complaint, and state:

**PLAINTIFFS' CLAIMS ARE GOVERNED BY THE SITE OF THE DEFENDANTS' "WRONGFUL ACT" AND NOT BY THE SITE OF THE MANUFACTURE OF ONE COMPONENT OF THE ALLEGED DEFECTIVE DEVICE**

The alleged defective device at issue in this case is the HVAD System that Plaintiffs' decedent was using at the time of his fatal injury, not the defectively manufactured batteries. Plaintiffs' have alleged, and Defendants have not disputed, that the actual device that failed, causing John Winkler's death, was designed and assembled in Minnesota. As set forth in the Second Amended Complaint, the HVA System is comprised of various components, which include battery packs, chargers, controllers, AC adapters, HVAD monitors. It is undisputed that the HVAD System was designed and assembled by Defendants. According to the Affidavit of Defendants' "Representative"

1

Justin Dierking, the various components of the Defendants' HVAD System were manufactured by third party manufacturers that are not Defendants in this action. As the manufacturer of the system, Defendants are responsible for the alleged negligence of its component manufacturers. According to the Dierking Affidavit, the alleged defectively manufactured batteries were manufactured in Connecticut by "Cirtec Medical." Plaintiffs allege that the components of the HVA System in use at the time of John Winkler's injury were assembled into the final HVAD System by Defendants at their manufacturing facility located in Minnesota. 1   This would include defectively manufactured batteries and/or controllers. In their Opposition, Defendants do not dispute this allegation.2

The Maryland Wrongful Death statute states that "if the wrongful act occurred in another state, the District of Columbia, or a territory of the United States, a Maryland Court shall apply the substantive law of that Jurisdiction." *Code of Maryland,* Courts & Judicial Proceedings Article, §3-903(a). 3   "Wrongful Act" is defined in §3-901(e) "as "an act, neglect, or default including a felonious act which would have entitled the party injured to maintain an action to recover damages if death had not ensued." It was only when the various components, including the defective batteries, were assembled into the HVA System, that the Defendants committed a "wrongful act." Accordingly, the "wrongful act" that resulted in the death of John C. Winkler, occurred in the State of Minnesota.

---

1 Defense counsel initially indicated to Plaintiffs' counsel that the device was "manufactured in Minnesota" and months later provided the Dierking Affidavit indicating where the various components were manufactured. The requests for extension to file the Amended Complaint were due to Defendants' inability to determine the location of manufacture.   Plaintiffs had no way of knowing who manufactured the batteries.
2   Heartware's assembly and manufacturing facilities are located in Arden Hills, Minnesota.
3   The Court has ruled that the statute of limitation under the Maryland Wrongful Death statute is substantive not procedural.   Plaintiffs except to this ruling.

This is in accord with the holding in *Kielar v. Granite Construction Company*, 647 F. Supp 2d 524 (D. Md, 2009). In *Kielar,* Plaintiff's decedent was killed in Maryland as a result of allegedly defective helicopter litter manufactured by a non-party Ferno-Aviation in Georgia or Ohio, but installed in the helicopter by the Defendant Metro Aviation in Louisiana. Plaintiff argued that the negligent design or manufacture of the litter in Ohio, precluded the application of Louisiana law. This Court rejected the contention that the location of alleged negligence by a non-party precluded the application of the statute of limitations of the location where the final product was designed and where the components were installed, stating: "[B]ecause (1) wrongful act is defendant specific, and (2) the Plaintiffs have not introduced evidence that Metro Aviation acted outside of Louisiana, the work performed by a nonparty in Georgia or Ohio does not preclude application of the Louisiana law." *Kielar,* 647 F. Supp 2d 524, 528. Citing, *Farwell v. Un*, 902 F.2d, 282, 287 (4th Cir, 1990) in *Kielar* that this Court held that "*Farwell* makes clear that the choice of law under Maryland's wrongful death statute is determined by the location of the **defendant's** actions. Accordingly, the choice of law analysis in this case will be determined by the location of Metro Aviation's allegedly wrongful acts." (emphasis supplied), 647 F. Supp 2d, 524, 528.

Defendants have provided an Affidavit from its "Representative" Justin Dierking, which indicates that the recalled batteries were manufactured in Connecticut by "Cirtec Medical." Defendants argue that the Connecticut wrongful death statute of limitations should apply in this action. It is irrelevant where one component of the HVAD System was manufactured by a third party. This issue is where the Defendants' negligence occurred, that

3

is, where the Defendants' "wrongful act" occurred.  It was only after the alleged defectively manufactured batteries were incorporated into the HVAD system and introduced into the stream of commerce that a "wrongful act" occurred. Plaintiffs assert that this occurred in Defendants' facilities in Minnesota, and that the Minnesota statute of limitations applies to this action.

*Minnesota Statutes,* §573.02, subdivision 1, provides that an action for wrongful death "may be commenced within three years after the date of death, provided that the action must be commenced within six years after the act or omission."   Accordingly, this action was timely filed within three years of John Winkler's death.[4]

### THE SECOND AMENDED COMPLAINT SETS FORTH A CAUSE OF ACTION FOR NEGLIGENT MANUFACTURE AND FAILURE TO WARN.

In the second Amended Complaint, Plaintiffs have alleged that John Winkler's death was caused by defectively manufactured batteries that were incorporated into the HVAD system by Defendants.  Plaintiffs further allege that Defendants knew or should have known of the defective batteries and failed to warn Mr. Winkler of the defective batteries and the risk of serious injury or death in the event of a power failure. Specifically, Plaintiffs allege that "On November 20, 2012, HeartWare, Inc., received premarket approval for the "HeartWare Ventricular Assistive System" as a Class III device from the United States Food and Drug Administration**.**  The batteries for the HVA System are expected to function through a minimum of 500 charge and discharge cycles to provide patient support for at least one year. **Defectively manufactured batteries**

---

[4] Plaintiffs maintain that the statute of limitations applicable to this action is the three year Maryland statute of limitations.

**which fail to hold a charge due to faulty cells violate the standards required by the FDA for premarket approval of the HVA System.**"   (Emphasis Supplied)   In Paragraph 4 of the Second Amended Complaint, Plaintiffs describe the method by which the HVAD System failed, resulting in John Winkler's death:  "On January 4, 2015, John Winkler had two batteries connected to the controller, the primary and the back up battery.  The manner in which the HVA system is intended to work is, when one battery was depleted (25% of capacity), the controller would automatically switch to the back up battery for power.   However, in this instance, the back-up battery was defectively manufactured due to faulty cells, and was fully depleted.  When the controller switched to the back up battery, there was no power to operate the pump.   When the system lost all power, the pump stopped working depriving John C. Winkler of heart function.   When the pump stopped working, John C. Winkler suffered a cardiac arrest from which he died on January 6, 2015."

     In Count One, Paragraph 7, Plaintiffs allege "In their manufacturer of the HVA System, Defendants had a duty to manufacture their product so as to fit the purpose for which it was intended, to reproduce the pumping action of the left ventricle in a safe and reliable manner in order for the heart to function, with the knowledge that failure of the device would result in the death of its user.   In Paragraph 8 of the Second Amended Complaint, Plaintiffs allege that the manufacturing defect caused John Winkler's death as follows:  The manner in which the HVA system is intended to work is, when one battery was depleted (25% of capacity), the controller would automatically switch to the back up battery for power.   **However, in this instance, the back-up battery was defectively**

5

**manufactured due to faulty cells, and was fully depleted.**  When the controller switched to the back up battery, there was no power to operate the pump.   When the system lost all power, the pump stopped working depriving John C. Winkler of heart function.   When the pump stopped working, John C. Winkler suffered a cardiac arrest from which he died on January 6, 2015." (Emphasis supplied).   As noted above, Plaintiffs have alleged that **"defectively manufactured batteries which fail to hold a charge due to faulty cells violate the standards required by the FDA for premarket approval of the HVA System.**"   (Emphasis Supplied)   The batteries for the HVA System are expected to function through a minimum of 500 charge and discharge cycles to provide patient support for at least one year.   The failure to meet this requirement violates that standards required by the FDA.

Defendants argue that Plaintiffs have failed to allege a manufacturing defect. Plaintiffs have identified the manufacturing defect, using the actual description from the defendants' Class 1 recall of the HVA system batteries on January 7, 2016:  (Exhibit A)

**"Reason for Recall.**

**Heartware, Inc., is recalling the batteries because they may lose power prematurely due to faulty cells.**   If the HVAD System is not connected to an additional power source shortly after the system sounds an alarm indicating a low battery level, the pump will stop working and the patient may experience serious adverse health consequences, including death." (emphasis supplied).

In designating the reason for the recall, Defendants themselves have distinguished the defect as one due to manufacture, not design, of the batteries.  According to

6

Defendants' recall notice, the batteries contained "faulty cells." There was not a problem with the design; it was a manufacturing error. As noted above, the batteries for the HVA System are expected to function through a minimum of 500 charge and discharge cycles to provide patient support for at least one year. The failure of the batteries to hold a charge was due to a manufacturing error, no the approved design of the system. This is not "an attempt 'to impose requirements on Defendants that are different from or in addition to' those imposed by federal law," as argued by Defendants in their motion.

In Count Two, Plaintiffs allege that Defendants failed to warn of the risks of the faulty batteries. Plaintiffs allege that "Defendants knew or should have known that the batteries in use by patients were defective due to faulty cells and that they could fail without sufficient notice to users to allow for alternative power source to the LVAD to avoid serious injury or death. Defendants failed to timely notify and warn the users of its HVAD System, including Plaintiffs' decedent John C. Winkler, of the product defect and the potential for serious injury or death in the event of a total loss of power to the LVAD."

These allegations are not related to the approved warnings for the product when it was originally approved by the FDA, but rather the failure to timely inform users of a product manufacturing defect that endangered their health and possibly their life. This is not "an attempt 'to impose requirements on Defendants that are different from or in addition to' those imposed by federal law," as argued in their motion.

WHEREFORE, Plaintiffs pray that Defendants' Motion to Dismiss the Second Amended Complaint be denied.

                                            **/s/ John J. Sellinger**
                                            John J. Sellinger 05236
                                            Greenberg & Bederman, LLC
                                            1111 Bonifant Street
                                            Silver Spring, MD 20910
                                            (301) 589-2200
                                            (301) 589-9424 (fax)
                                            jsellinger@gblawyers.com

                                            Attorneys for Plaintiffs


## CERTIFICATE OF SERVICE

       I HEREBY CERTIFY that on the 30th day of April, 2019, the foregoing document was filed via the Court's CM/ECF system upon

Matthew W Saxon, Esquire,
Winston & Strawn, LLP
700 K. Street,, N.W.
Washington, D.C. 20006-3871

and

Scott Ahmad, Esquire
DaWanna McCray, Esquire
Winston & Strawn, LLP
35 Wacker Drive, Chicago, IL 60601

Attorneys for Defendants.


                                            **/s/ John J. Sellinger**
                                            John J. Sellinger